# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Christopher Gates (M-55005), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 C 2744 |
| v. ) | |
| ) | Judge Elaine E. Bucklo |
| Randy Pfister, , ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Christopher Gates, an Illinois prisoner confined at Danville Correctional Center, filed this 42 U.S.C. § 1983 suit against former Stateville Correctional Center Warden Randy Pfister (Defendant). Plaintiff alleged he experienced unconstitutional living conditions and overly restrictive restraints when going to court during his confinement at Stateville's Northern Reception and Classification Center (NRC). Currently before the Court is Defendant's motion for summary judgment, which argues that Plaintiff did not exhaust administrative remedies and that Defendant was personally involved with the conditions or restraints about which Plaintiff's complains. For the reasons that follow, the Court grants Defendant's motion.

## BACKGROUND

The Court draws the background facts from Defendant's N.D. Ill. Local Rule 56.1 Statement of Material Facts (Dkt. 63, Def. SOF.) Plaintiff was given several opportunities to respond to Defendant's SOF, and he received a Local Rule 56.2 Notice to Pro Se Litigant explaining how to respond. (Dkt. 64, 65, 66, 68.) Nevertheless, he filed no response. The Court thus considers Defendant's factual assertions in its Rule 56.1 Statement admitted to the extent they are supported by the record. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the

statement of the opposing party."); *Wilson v. Kautex, Inc.*, 371 Fed. Appx. 663, 664 (7th Cir. 2010) ("enforcing Local Rule 56.1 [i]s well within the district court's discretion, even though [a plaintiff] is a pro se litigant").

Plaintiff entered Stateville's NRC in February of 2017. (Dkt. 63, Def. SOF ¶ 5.) He filed this suit in April of 2017. (*Id.* at ¶ 9.) Plaintiff alleged that he was handcuffed and shackled when he went to court and that the restraints were not removed, even after he was confined in a holding cell at court. According to Plaintiff, wearing restraints was painful and made it was difficult to eat. This continued for every court date until he transferred to the Cook County Jail on April 22, 2017. (*Id.* at ¶ 6.) Plaintiff further alleged that his NRC cell was dusty and dirty; the mat he received to sleep on was dirty and had pubic hairs on it; he received no broom or other cleaning supplies; he was prescribed, but never received, antihistamines for allergies and sinus issues; water from sinks was brown and undrinkable; and food (chicken) was often undercooked. (*Id.* at ¶ 7, citing Dkt. 63-2, copy of amended complaint.)

While at Stateville's NRC, Plaintiff wrote one grievance. (*Id.* at ¶ 17.) The grievance is dated March 17, 2017. (*Id.*, citing Dkt. 63-5, pg. 3-4 (copy of grievance)). Plaintiff did not submit the grievance to his counselor or to a Stateville grievance officer. (Dkt. 63 at ¶ 18.) Instead, he sent it directly to the Administrative Review Board (ARB) in Springfield, Illinois. (*Id.* at 19, citing Dkt. 63-6, Pl. Dep., pg. 62.) The ARB received Plaintiff's grievance on March 4, 2017 and returned it on April 4, 2017, without ruling on it because Plaintiff included no response from a grievance officer or Chief Administrative Officer (i.e., the warden). (*Id.* at ¶¶ 20-21, citing 63.5, pg. 2 (copy of ARB response)). Other than sending the one grievance to the ARB, Plaintiff took no further action about his complaints. (Dkt. 63 at ¶ 24.)

Plaintiff understood that he had to exhaust the grievance process before filing suit, but he was told by Stateville inmates that prison officials would never respond to it, which is why Plaintiff sent it directly to the ARB in Springfield. (*Id.* at ¶ 22, citing Dkt. 63-6, Pl. Dep. at 70.)

Plaintiff has never seen, written to, or communicated with former Stateville Warden Randy Pfister. (Dkt. 63 ¶ 27.) Plaintiff never told Defendant about the issues that are the subject of this suit. Plaintiff never informed him about problems he had with dust in his cell and never requested a new mat. Nor was Defendant involved with the restraints used when Plaintiff went to court. (*Id.* at ¶¶ 28-30.)

### **DISCUSSION**

Defendant's motion for summary judgment argues: (1) Plaintiff did not exhaust administrative remedies before filing this suit, and (2) Defendant was not personally involved with the constitutional violations Plaintiff asserts. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The Court's role is "to determine whether there is a genuine issue for trial," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), not to "weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). If the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, the burden shits to the non-movant, who must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." *Scott*, 530 U.S. at 380 (emphasis in original).

3

**1)    Exhaustion**

The Prison Litigation Reform Act states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "is 'mandatory'" and "a court may not excuse a failure to exhaust" available remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

To exhaust administrative remedies, an inmate must use "'all steps that the agency holds out,' and he must 'do[ ] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). An inmate must use "the specific procedures and deadlines established by the prison's policy." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (the Seventh Circuit has taken a "'strict compliance approach to exhaustion'" and a "prisoner must properly use the prison's grievance process").

Grievance procedures for Illinois prisoners are set out in 20 Ill. Admin. Code § 504.800, et seq. The procedures were amended on April 1, 2017. *See* 2017 IL REG TEXT 429108 (NS) (showing both the pre- and post-April 1, 2017 versions). The grievance process in the two versions are essentially the same, and Plaintiff did not properly follow either version's procedures.

Before April 1, 2017, the grievance procedures for Illinois Department of Corrections' (IDOC) inmates were as follows:

(1) An inmate had to "fist attempt to resolve his" issue "through his or her counselor." 20 Ill. Admin. Code § 504.810 (2016); *see also* 2017 IL REG TEXT 429108 (NS).

(2) If the counselor did not adequately resolve the issue, the inmate could file a written grievance within 60 days of the date of the incident or issue being grieved (a late grievance was

4

allowed if the inmate could establish "good cause" for its untimeliness). A prison grievance officer reviewed the grievance, interviewed witnesses and conducted investigations if needed, and reported his or her findings, conclusions, and recommendations to the CAO. *Id.* The CAO reviewed the grievance officer's findings, conclusions, and recommendations, and the CAO submitted his or her decision to the inmate. *Id.*

(3) If the inmate was unsatisfied with the CAO's decision, the inmate could appeal to the ARB within 30 days of the decision. *See* 20 Ill. Admin. Code § 504.850; *see also* 2017 IL REG TEXT 429108 (NS). The ARB—after reviewing the grievance and responses to it and interviewing the inmate and witnesses if necessary—would submit its written findings and conclusions to the IDOC Director. *Id.* The Director then issued his or her written decision, which was returned to the inmate and which concluded the grievance process. *Id.*

The current (post-April 1, 2017) version of the grievance procedures, is the same as those set out above, except now inmates begin the administrative process with a written grievance and are not required to first attempt informal resolution with a counselor. *See* § 504.810(a); *see also* 2017 IL REG TEXT 429108.

The summary judgment record establishes that Plaintiff filed one grievance while at Stateville. He submitted it to no one at Stateville—neither a grievance officer, nor a counselor, nor Stateville's warden. (Dkt. 63-6, Pl. Dep. at 62-63.) Instead, he sent it to the "Springfield administration office." (*Id.* at 62.) According to Plaintiff, other inmates informed him that prison officials "will not even get [ ] to your grievance. So I sent it to the administration board because they are higher up." (*Id.* at 70.)

Plaintiff's contention that the grievance process at Stateville was futile does not excuse him from attempting to use the administrative remedies set out for him. *See Booth v. Churner*, 532 U.S.

5

731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *Steiskal v. Lewitzke*, 553 F. App'x 611, 616 (7th Cir. 2014) ("prisoners still must exhaust even if they believe the process will be futile"); *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006). Plaintiff cannot decide on his own that Stateville's grievance process was unavailable. He had to give prison officials "a fair opportunity to consider the grievance," which "exists only if 'the grievant complies with the system's critical procedural rules.'" *McCaskill v. Mansour*, No. 13 C 3169, 2015 WL 514935, at *4 (N.D. Ill. Feb. 6, 2015) (citing *Pavey v. Conley*, 663 F.3d 899, 905-06 (7th Cir. 2011)). This, Plaintiff did not do.

Defendant has submitted sufficient evidence demonstrating that a grievance system existed at Stateville and that Plaintiff failed to use it before he filed this suit. Plaintiff has submitted nothing in response.[1] Defendant is entitled to summary judgment based on Plaintiff's failure to exhaust available administrative remedies for his claims. *See Carroll*, 698 F.3d at 564 ("Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute.").

**2) Personal Involvement**

Summary judgment is also warranted based on Defendant's lack of personal involvement with Plaintiff's living conditions or restraints. "Section 1983 is premised on the wrongdoer's personal responsibility. Therefore, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552,

---

[1] Although not addressed by Defendant, there are some situations where an inmate may submit his grievance directly to the ARB: (1) to address decisions about his protective custody; (2) to address the administering of involuntary psychotropic medication; (3) disciplinary decisions made a facility different from where the grievant is located; and (4) other issues about a facility different from where the grievant is located. 20 Ill. Admin. Code § 504.870(a). Only the last situation has any potential applicability to Plaintiff's case. While Plaintiff transferred out of Stateville on April 22, 2017, and a grievance after that date could have been sent directly to the ARB, Plaintiff's only grievance was written in March of 2017, while he was still at Stateville. Plaintiff had to submit that grievance through the proper channels as set out in § 504.810.

556 (7th Cir. 2012); *see also Grieueson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). A supervisor cannot be held vicariously liable for the tortuous acts of subordinates in § 1983 actions, and "some causal connection or affirmative link between the action complained about and the official sued is necessary." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye").

The Court allowed Plaintiff's amended complaint to proceed against Warden Pfister—even though no personal involvement was alleged—because Plaintiff's conditions were "potentially systemic," rather than clearly localized. *See Smith v. Dart*, 803 F.3d 304, 310 n.2 (7th Cir. 2015) (at the pleading stage, "the personal involvement of senior jail officials, such as [a warden], can be inferred . . ., where . . . the plaintiff alleges 'potentially systemic,' as opposed to 'clearly localized,' constitutional violations") (quoting *Antonelli v. Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir. 1996)). "[W]hile personal involvement can be inferred at the pleading stage, . . ., at the summary judgment stage, [a plaintiff] must point to some evidence from which the Court can infer that Defendant was deliberately indifferent to the conditions of which he complains." *Villagran v. Dart*, No. 14 C 10361, 2016 WL 7426132, at *4 (N.D. Ill. Dec. 23, 2016) (citing *Rankin v. Dart*, No. 13 C 4671, 2016 WL 1046570, at *4 (N.D. Ill. Mar. 16, 2016) ("[A]t the summary judgment stage allegations are not enough; Plaintiff must point [to] some evidence from which the Court can infer that Defendants were aware of the conditions alleged.").

Here, the summary judgment record establishes that Plaintiff never communicated with Defendant, either in person or in writing. (Dkt. 63 at ¶¶ 27-30.) All Plaintiff did was fill out one grievance, which he submitted to the ARB in Springfield, but to no one at Stateville. (*Id.* at ¶¶ 17-19.) The summary judgment record thus demonstrates that Defendant had no knowledge of nor personal involvement with either Plaintiff's living conditions or the restraints he was forced to

wear when attending court. Defendant has met his burden. Plaintiff has offered no response. Defendant is thus entitled to summary judgment based on his lack of personal involvement with constitutional issues Plaintiff alleges. *See Carroll*, 698 F.3d at 564; *see also Arnett*, 658 F.3d at 760 ("summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.")

## **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment [61] is granted. This case is dismissed. Final judgment shall enter for Defendant. Defendant need not file a reply by May 15, 2019.

If Plaintiff wishes to appeal, he must file a notice of appeal in this Court within thirty days of judgment and pay the $505.00 filing fee. *See* Fed. R. App. P. 4(a)(1). If Plaintiff seeks to pay the appellate filing fee with monthly deductions from his prison trust account, similar to his payment of this Court's filing fee, he must file another *in forma pauperis* application. If he seeks to proceed IFP on appeal, his application must include the issues he intends to raise on appeal. *See* Fed. R. App. P. 24. If the appeal is without merit, Plaintiff could receive a strike under 28 U.S.C. § 1915(g). If a prisoner accumulates three strikes, he may not file a federal suit or appeal without prepaying the filing fee, unless he is in imminent danger of serious physical injury. *See* § 1915(g).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment, and cannot be extended. Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief

under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment. The time to file a Rule 60(b) motion cannot be extended. *See* Rule 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: May 2, 2019                     /s/ Hon. Elaine E. Bucklo
                                      United States District Judge